NUMBER 13-05-00297-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

CHRISTOPH LEE MORRIS, Appellant,


v.
 


NICOLE LINEA MORRIS, Appellee.

 


On appeal from the County Court at Law No 2


of Hidalgo County, Texas.

 


MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Yañez and Vela 


Memorandum Opinion by Chief Justice Valdez



 This appeal stems from a divorce proceeding and personal injury suit. Nicole
Morris, appellee, filed a petition for divorce and suit for damages based upon assault and
intentional infliction of emotional distress ("IIED") against Christoph Morris, appellant. 
Christoph answered with a general denial and a counterpetition for divorce. The case was
tried to a jury. The jury found that Nicole should be named sole managing conservator of
the couple's minor children, and that Christoph assaulted Nicole and intentionally inflicted
emotional distress on her; the jury awarded $165,000.00 in actual damages and
$250,000.00 in exemplary damages. A final decree of divorce and judgment for damages
was entered based upon the jury's verdict. In fifteen issues, Christoph challenges (1) the
custody award, (2) the legal and factual sufficiency of the asserted causes of action and
damages, (3) the jury charge, and (4) certain evidentiary rulings made by the trial court. 
We affirm.

I. BACKGROUND

 Nicole and Christoph were married on June 21, 1991. The couple had two children
during their marriage, G.M. and P.M. On September 24, 2001, Nicole filed for divorce. 
Christoph was appointed temporary sole managing conservator. In her second amended
petition, Nicole alleged that Christoph assaulted her on or about September 24, 1995 by
throwing a microwave at her, shaking her by her arms in an offensive manner, and sexually
assaulting her. (1) Nicole also alleged intentional infliction of emotional distress based upon
Christoph's emotional, physical, and sexual behavior toward her as well as his alleged
alienation of the children from her, including a decreased relationship with her children. 

 Nicole sought custody of the children, in part, because she considered Christoph's
behavior towards them abusive. She testified that before the children's bedtime, he would
tickle them, getting them excited, and then expect them to go straight to sleep. When the
children would leave their bedroom, Christoph would get upset and spank them. Nicole
also claimed that her relationship with the children suffered during the time Christoph was
temporary sole managing conservator.

 At trial, Nicole testified as to verbal encounters she had with Christoph. Christoph
told her on a daily basis that she was completely crazy, that everything bad that happened
was her fault, and that "[stuff] rolled off him and stayed on her." Nicole also claimed
Christoph told her in the presence of the children that G.M was the smart child and must
have inherited her intelligence from him, while P.M. was "the dumb one," like her. During
an argument, Christoph allegedly exclaimed to Nicole that he was gay and that he married
her so that he could have children and a house.

 Nicole also testified as to certain physical encounters that happened at the couple's
home. Her testimony recounted how Christoph would intentionally slam doors on the dog
and force it to swim in the pool to near exhaustion. There was also an incident where
Christoph allegedly smashed almost all of the windows on Nicole's car with a hammer
because he did not think Nicole deserved to have a new car. On one occasion, she
claimed Christoph came home upset, yelled at her, shoved a microwave off the counter
towards her, and broke a rolling kitchen bar. The incident was allegedly witnessed by G.M. 
Another assault incident allegedly occurred during the summer of 2001, when Christoph
asked Nicole for sex and she refused. He insisted she did not have a choice and
demanded she take off her clothes. Nicole testified that when she took off her clothes,
Christoph covered their bed with a shower curtain, "lathered himself" up with baby oil, and
forced her to have anal intercourse. 

 During his testimony, Christoph denied ever having forced himself on Nicole. He
testified that the couple enjoyed a good marital life and that any of the sexual incidents
Nicole described were consensual. According to Christoph, Nicole had a tendency to
blame other people for problems and did not get along with family members or co-workers. 
He also testified that Nicole would falsely accuse family members of sexual abuse and
homosexuality. 

 Among the many witnesses who testified were Melinda O'Connor, Kit Harrison,
Ph.D, and Maria Arango, M.D. O'Connor became acquainted with Nicole and Chistoph in
2000. She testified that before the divorce the children acted very positively towards
Nicole. After Nicole filed for divorce, and the children were living with Christoph, O'Connor
noticed a change in their behavior. They would throw tantrums, be openly critical of Nicole,
and P.M. used profanity. Harrison, a psychologist, reviewed another psychologist's report
on the family members, testified about the report, and made general observations about
the situation. Harrison opined that a parent who criticizes another parent's cooking,
cleaning, housekeeping, or parenting is one who engages in parental alienation. Dr.
Arango was Nicole's physician and testified as to Nicole's health. Nicole's medical records
were admitted by the court and evidence Nicole's complaints of Christoph's requests for
anal sex and forcing her to have sex.

 The relevant questions submitted to the jury were (1) who should be appointed
managing conservator of the children; (2) whether Christoph assaulted Nicole; (3) whether
Christoph intentionally inflicted severe emotional distress on Nicole; (4) what amount of
damages would compensate Nicole; and (5) what amount of exemplary damages should
be awarded. On a ten-to-two verdict, the jury appointed Nicole sole managing conservator,
found that Christoph assaulted her and intentionally inflicted severe emotional distress on
her, awarded her $165,000.00 in past compensatory damages, and awarded her
$250,000.00 in exemplary damages. The trial court entered a divorce decree and
judgment upon the jury's verdict. This appeal ensued.

II. DISCUSSION

A. Appointment of Nicole as Sole Managing Conservator

 By his fourteenth and fifteenth issues, Christoph challenges the legal and factual
sufficiency of the evidence presented to the jury in making its finding that Nicole should be
appointed sole managing conservator. The best interest of the child shall always be the
court's primary consideration in determining the issues of conservatorship, possession, and
access to the child. In re J.E.P., 49 S.W.3d 380, 386 (Tex. App.-Fort Worth 2000, no
pet.). Generally, the trial court is given wide latitude in determining the best interest of a
minor child, and its judgment will not be disturbed on appeal unless the record as a whole
shows that the trial court abused its discretion. Id.

 In reviewing a child custody ruling under an abuse of discretion standard, legal and
factual sufficiency are not independent grounds of error, but are relevant factors in deciding
whether the trial court abused its discretion. In re T.D.C., 91 S.W.3d 865, 872 (Tex.
App.-Fort Worth 2002, pet. denied) (op. on reh'g). In determining whether there has been
an abuse of discretion because the evidence is legally or factually insufficient to support
the trial court's decision, we engage in a two-pronged inquiry: (1) did the trial court have
sufficient information upon which to exercise its discretion; and (2) did the trial court err in
its application of discretion? Id.; see Lindsey v. Lindsey, 965 S.W.2d 589, 592 (Tex.
App.-El Paso 1998, no pet.). The traditional legal sufficiency review comes into play with
regard to the first question. Lindsey, 965 S.W.2d at 592. We then proceed to determine
whether, based on the elicited evidence, the trial court made a reasonable decision. Id.

 In a legal sufficiency review, we view the evidence in a light most favorable to the
judgment and indulge every reasonable inference to support it, crediting favorable
evidence if a reasonable jury could and disregarding contrary evidence unless a
reasonable jury could not. City of Keller v. Wilson, 168 S.W.3d 802, 807, 822 (Tex. 2005).
More than a scintilla of evidence exists if the evidence furnishes some reasonable basis
for differing conclusions by reasonable minds about the existence of a vital fact. Rocor
Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).

 An assertion that the evidence is factually "insufficient" to support a fact finding
means that the evidence supporting the finding is so weak or the evidence to the contrary
is so overwhelming that the answer should be set aside and a new trial ordered. Garza v.
Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We are required to consider all of the evidence
in the case in making this determination, not just the evidence that supports the finding. 
Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998)

 To determine whether a trial court abused its discretion, we must decide whether
the trial court acted without reference to any guiding rules or principles; in other words,
whether the act was arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985). Merely because a trial court may decide a matter
within its discretion in a different manner than an appellate court would in a similar
circumstance does not demonstrate that an abuse of discretion has occurred. Id. An
abuse of discretion does not occur where the trial court bases its decisions on conflicting
evidence. Davis v. Huey, 571 S.W.2d 859, 862 (Tex. 1978); see also Goode v. Shoukfeh,
943 S.W.2d 441, 446 (Tex. 1997). Furthermore, an abuse of discretion does not occur as
long as some evidence of substantive and probative character exists to support the trial
court's decision. Butnaru v. Ford Motor Co., 84 S.W.3d 198, 211 (Tex. 2002).

 Christoph's sole argument in his sufficiency challenge is that Nicole was at odds with
many people in her life. While there was evidence to that effect during the lengthy trial,
there was also significant countervailing evidence. Some of that evidence included
Nicole's testimony of Christoph's disparaging comments about her intelligence and the
intelligence of one of the couple's children. There was also the testimony of Harrison, who
suggested that some of Christoph's alleged behavior was consistent with parental
alienation. The trial court therefore had sufficient information to make a decision. 
Moreover, Christoph's denial of Nicole's allegations and his testimony that Nicole would
falsely accuse family members of sexual abuse and homosexuality does not make the
evidence supporting the jury's finding so weak as to require a new trial. Additionally,
Christoph's testimony does not amount to overwhelming evidence against the jury's finding.

 Considering all of the evidence, we conclude the evidence is both legally and
factually sufficient to support the jury's finding that naming Nicole as sole managing
conservator was in the best interests of the children. We hold that the trial court did not
abuse its discretion in rendering a custody judgment based upon the jury's verdict. 
Christoph's fourteenth and fifteenth issues are overruled.

B. Exclusion of Children's Testimony

 By his thirteenth issue, Christoph asserts that the trial court would not have
appointed Nicole sole managing conservator had his motion to record the testimony of the
children been granted. The relevant statute reads:

 The court may, on the motion of a party to the proceeding, order that the
testimony of the child be taken outside the courtroom and be recorded for
showing in the courtroom before the court, the finder of fact, and the parties
to the proceeding.

Tex. Fam. Code Ann. § 104.003(a) (Vernon 2002) (emphasis added). Other than stating
his argument, Christoph fails to elaborate on how the trial court's ruling caused the
rendition of an improper judgment. Tex. R. App. P. 38.1(h) (providing that the brief must
contain a clear and concise argument for the contentions made, with appropriate citations
to authorities and to the record). We hold that the trial court did not abuse its discretion. 
Christoph's thirteenth issue is overruled.

C. Statute of Limitations & Preservation of Error

 By his fourth and fifth issues, Christoph contends that the evidence is legally
insufficient to establish that the alleged assault and IIED occurred before the limitations
period expired. In his seventh and eighth issues, he argues that the award of actual
damages based upon the assault and IIED claims should be reversed because the
evidence is factually insufficient as to whether the torts occurred during the limitations
period. We disagree.

 Christoph maintains that a two-year statute of limitations period under Texas Civil
Practice and Remedies Code section 16.003 applies to Nicole's claims. See Tex. Civ.
Prac. & Rem. Code Ann. § 16.003 (Vernon Supp. 2006). The record contains Christoph's
original answer and second amended counterpetition for divorce filed on December 12,
2002. We note that Nicole did not file her tort claims until August 18, 2003. Nevertheless,
given the record before us, Christoph went to trial on his original answer. It included a
general denial and failed to assert the affirmative defense of limitations. 

 In order to rely on the affirmative defense of limitations, a defendant must plead,
prove, and secure findings to sustain the affirmative defense. Woods v. William M. Mercer,
Inc., 769 S.W.2d 515, 517 (Tex. 1988). Christoph did not plead the affirmative defense
of limitations and did not raise any objection to the charge. By failing to request and secure
a jury finding on his affirmative defense, Christoph has not preserved these complaints for
appellate review. See Rivas v. Cantu, 37 S.W.3d 101, 116-17 (Tex. App.-Corpus Christi
2000, pet. denied); Abraxas Petroleum Corp. v. Hornburg, 20 S.W.3d 741, 763 (Tex.
App.-El Paso 2000, no pet.). Accordingly, Christoph's fourth, fifth, seventh, and eighth
issues are overruled.

D. Legal and Factual Sufficiency of Assault and IIED Claims: Actual Damages (2)

 In Christoph's sixth and ninth issues, he argues that the evidence is legally and
factually insufficient to support an award of actual damages. We disagree.

 The elements of assault are the same in both civil and criminal cases. Forbes v.
Lanzl, 9 S.W.3d 895, 899 (Tex. App.-Austin 2000, pet. denied). A person commits an
assault by (1) intentionally, knowingly, or recklessly causing bodily injury to another; (2)
intentionally or knowingly threatening another with imminent bodily injury; or (3)
intentionally or knowingly causing physical contact with another when the person knows
or should reasonably believe that the other will regard the contact as offensive or
provocative. Tex. Pen. Code Ann. § 22.01 (Vernon 2004); Forbes, 9 S.W. 3d at 900;
Wal-Mart Stores, Inc. v. Odem, 929 S.W.2d 513, 522 (Tex. App.-San Antonio 1996, pet.
denied). 

 The record before us includes he-said-she-said testimony from Nicole and Christoph
regarding the assault claim. Nicole testified that she was forced to have anal intercourse
and that she was "horrified" and "devastated" by the experience. Christoph denied ever
forcing Nicole to have sex against her will. The record also contains Dr. Arango's
testimony and medical records. Nicole visited Dr. Arango on August 18, 2001. During that
visit, Dr. Arango noted that Nicole was "having problems with husband," that he was
"requesting anal sex," and that Nicole stated her husband "forces her to have sex." Dr.
Arango testified that Nicole presented with anal fissures on the August 2001 visit, which,
according to Dr. Arango's testimony, makes her allegation of forced anal intercourse more
believable. 

 The testimony of Nicole and Dr. Arango, coupled with Nicole's medical records,
amount to more than a scintilla of evidence and constitute legally sufficient evidence to
support the assault claim. Given that there is legally sufficient evidence to support the
award of actual damages under Nicole's assault theory, we need not address whether the
award of actual damages was based upon Nicole's IIED claim. Tex. R. App. P. 47.1
Christoph's sixth issue is overruled.

 In conducting our factual sufficiency review, we are mindful that the jury is the sole
judge of the credibility of witnesses and the weight to be given to their testimony, and we
may not substitute our judgment for that of the jury. See Golden Eagle Archery, Inc. v.
Jackson, 116 S.W.3d 757, 761 (Tex. 2003); Maritime Overseas Corp. v. Ellis, 971 S.W.2d
402, 407 (Tex. 1998). We set aside a finding for factual insufficiency only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986) (per curiam). 

 In the instant case, the evidence was hotly contested. Weighing the credibility of
Nicole and Christoph's testimony is within the jury's province. See Jackson, 116 S.W.3d
at 761. Nearly all of the contradicting evidence comes from Christoph's testimony. 
Nicole's testimony is supported by the medical records and the testimony of Dr. Arango. 
Even considering Christoph's testimony, we conclude the jury's verdict as to the damages
is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust. Christoph's ninth issue is overruled.

E. Charge Error

 By Christoph's first issue, he argues the jury charge is flawed because it allowed for
the recovery of exemplary damages (1) without a finding of malice, (2) on a less than
unanimous verdict, and (3) under a "preponderance of the evidence" standard instead of
a "clear and convincing" standard. 

 Christoph's unanimous verdict argument fails. A unanimous verdict is required for
the award of exemplary damages in causes of action filed on or after September 1, 2003. 
See Tex. Civ. Prac. & Rem. Code Ann. § 41.003(d) (Vernon Supp. 2006). However,
causes of action accruing on or after September 1, 1995 and filed before September 1,
2003 do not have a unanimity requirement. See Comm. on Pattern Jury Charges, State
Bar of Tex., Texas Pattern Jury Charges: General Negligence, Intentional Torts PJC 8.6B
(2006). Nicole's cause of action accrued sometime after September 1, 1995, her suit was
filed on September 24, 2001, and amended to include the tort claims on August 18, 2003.
Therefore, there was no need for the verdict to be unanimous. 

 Exemplary damages may be awarded only if the claimant proves by clear and
convincing evidence that the harm with respect to which the claimant seeks recovery
resulted from fraud, malice, or gross negligence. Tex. Civ. Prac. & Rem. Code Ann. §
41.003 (Vernon Supp. 2006). In the instant case, the charge did not require the jury to
make a finding of malice before awarding exemplary damages. Additionally, the charge
did not specify a clear and convincing standard.

 To preserve error for appellate review regarding a jury instruction, counsel must
make an objection specific enough to enable the trial court to understand the precise
grounds and make an informed ruling. Tex. R. App. P. 33.1(a); Castleberry v. Branscum,
721 S.W.2d 270, 276 (Tex. 1986). The test for determining if a party has preserved error
in the jury charge is whether the party made the trial court aware of the complaint, timely
and plainly, and obtained a ruling. State Dep't of Highways & Pub. Transp. v. Payne, 838
S.W.2d 235, 241 (Tex. 1992). Where the complaint is that the trial court failed to submit
a particular definition or instruction, the complaining party must have presented a written
request for its inclusion, tendering the proposed definition or instruction in substantially
correct wording. Tex. R. Civ. P. 278; Gilgon, Inc. v. Hart, 893 S.W.2d 562, 565 (Tex.
App.-Corpus Christi 1994, writ denied). However, if the charge contains an affirmative
misstatement of the law, an objection suffices to preserve error. Religious of the Sacred
Heart v. City of Houston, 836 S.W.2d 606, 613-14 (Tex. 1992).

 No objection to the burden of proof was raised during trial or in the pleadings. 
Therefore, Christoph's malice and burden of proof arguments were not preserved for
review and are not properly before this Court. Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 278. 
Christoph's first issue is overruled. 

F. Sufficiency of the Evidence Regarding Exemplary Damages

 By his second and third issues, Christoph challenges the legal and factual
sufficiency of the evidence regarding the exemplary damages awarded for the assault and
intentional infliction of emotional distress torts. (3) 

 The exemplary damages question was submitted on a preponderance of evidence
standard as found in the charge's general instructions. Christoph invites this Court to
review the evidence as if the exemplary damages question were charged under a clear and
convincing standard. However, as already noted, there was no objection to the charge. 
Therefore, the burden of proof issue is not properly before this Court. Tex. R. App. P.
33.1(a); Tex. R. Civ. P. 278; see also Green v. Allied Interests, Inc., 963 S.W.d 205, 210
(Tex. App.-Austin 1998, pet. denied). 

 The jury was instructed to consider the following factors in determining the amount
of exemplary damages: (1) the nature of the wrong, (2) the character of the conduct
involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities
of the parties concerned, and (5) the extent to which such conduct offends a public sense
of justice and propriety. 

 The nature of the wrong and character of the conduct is evidenced by Nicole's
testimony of being forced into having anal sex by Christoph, who maintains that the
couple's sexual relations were consensual. Nicole's graphic testimony about how
Christoph went about forcing anal sex on her speaks to his culpability, even though
Christoph maintains there was consent. 

 Considering all of the evidence, we conclude the evidence is both legally and
factually sufficient to support the jury's award of exemplary damages. Christoph's second
and third issues are overruled. 

G. Exclusion of Certain Evidence

 By his tenth and eleventh issues, Christoph contends that Nicole's counsel removed
a page from certain medical records before offering them to the trial court as an exhibit. 
Christoph contends that Nicole's counsel's removal of the page violated his right to due
course of law and the omitted page provided evidence that would have undermined
Nicole's testimony. At trial, Christoph objected to the admission of the medical records in
question. The trial court admitted Nicole's exhibit, took Christoph's objection under
advisement, but never made a ruling. 

 To challenge the exclusion of evidence, a party must (1) attempt to introduce the
evidence; (2) if an objection is made, specify the purpose for which the evidence is offered
and give the trial court reasons why the evidence is admissible; (3) obtain a ruling from the
court; and (4) if the court rules the evidence inadmissible, make a record, through an offer
of proof, of the precise evidence the party desires admitted. Tex. R. App. P. 33.2 (providing
the procedure to make formal bills of exception); Tex. R. Evid. 103 (detailing the effect of
an erroneous evidentiary ruling and requiring an objection and offer of proof for excluded
evidence); cf. Carlile v. RLS Legal Solutions, Inc., 138 S.W.3d 403, 411 (Tex.
App.-Houston [14th Dist.] 2004, no pet.) (holding that the issue of admissibility of evidence
was not preserved for appellate review when trial counsel offered an exhibit, did not get a
ruling, rested his case, and then attempted to make a bill of exceptions). 

 Because Christoph never obtained a ruling from the trial court, the issue is not
preserved for review. Tex. R. App. P. 33.2; Tex. R. Evid. 103. Christoph's tenth and
eleventh issues are overruled.

H. Allegations of Perjury

 Christoph contends in his twelfth issue that the trial court should have granted his
motion for a new trial because of newly discovered evidence. Nicole testified at trial that
Christoph smashed her car's windows and that when the police arrived, Christoph told her
that he would handle it. The "newly-discovered evidence" was a police report that said
Nicole was the individual questioned by police regarding the damage done to her car. 
According to Christoph, the police report evidences perjury on Nicole's part and that such
perjury was not foreseeable.

 It is incumbent upon a party who seeks a new trial on the ground of newly
discovered evidence to satisfy the court (1) that the evidence has come to his knowledge
since the trial; (2) that it was not owing to the want of due diligence that it did not come
sooner; (3) that it is not cumulative; and (4) that it is so material that it would probably
produce a different result if a new trial were granted. Jackson v. Van Winkle, 660 S.W.2d
807, 809 (Tex. 1983), overruled on other grounds by Moritz v. Preiss, 121 S.W.3d 715
(Tex. 2003). Christoph has failed to show how the police report meets the fourth factor. 
Tex. R. App. P. 38.1(h). His twelfth issue is overruled.

III. CONCLUSION

 The trial court's judgment is affirmed. Tex. R. App. P. 43.2(a).


 

 ROGELIO VALDEZ,

 Chief Justice


Concurring Memorandum Opinion 

by Justice Rose Vela. 


Memorandum Opinion delivered and filed 

this the 26th day of July, 2007.

 


1. Nicole's second amended petition was filed on August 18, 2003. It remains her live pleading in the
instant case. Tex. R. Civ. P. 65. 
2. Christoph does not challenge the availability of an IIED claim. See Moser v. Roberts, 185 S.W.3d
912, 915 (Tex.App. -Corpus Christ 2006, no pet.) (providing that the tort of IIED is first and foremost a "gap-filler" tort which was created for the limited purpose of allowing recovery in those rare instances where a
defendant inflicts severe emotional distress in a manner so unusual that the victim has no other recognized
theory of redress). Therefore, the issue of whether an IIED claim is available is not before the Court. Tex.
R. App. P. 38.1(e) (providing that the brief must state concisely all issues or points presented for review).
3. We have already held that Christoph did not preserve for review the trial court's failure to instruct
the jury to find malice before proceeding to the exemplary damages question. Given Christoph's waiver,
analysis of his sufficiency argument regarding malice would not change the disposition of this case. 
Therefore, we need not address it. Tex. R. App. P. 47.1.